**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ERIK LARSEN, ET AL.,**

**Plaintiffs,**

**- against -**

**OVATION-WORLDWIDE HOLDINGS, LLC, ET AL.,**

**Defendants.**

**26-cv-486 (JGK)**

**Memorandum Opinion and Order**

**John G. Koeltl, District Judge:**

The plaintiffs, Erik Larsen ("Larsen") and Roman Gorin ("Gorin"), bring this action against the defendants, Ovation-Worldwide Holdings, LLC ("Ovation") and James Whaley ("Whaley"). The plaintiffs entered into a Contract of Acquisition with Ovation pursuant to which Ovation agreed to acquire a software application named "Qualibee.AI" in return for employment agreements with the plaintiffs including provisions for royalties and the opportunity for a buy-back. Unhappy with the royalties they were receiving, the plaintiffs filed a copyright registration for "Qualibee.ai Software Codebase (Developer-Authored Components)."

The plaintiffs have now sued Ovation and Whaley, Ovation's Chief Executive Officer, on various claims arising out of Ovation's continued use of Qualibee. Specifically, the plaintiffs have sued Ovation for copyright infringement (Count I) and violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202 (Count II). The plaintiffs have sued Whaley for contributory and vicarious copyright infringement (Count III). The

plaintiffs have also sued both defendants for unjust enrichment (Count IV). In the alternative, the plaintiffs have sued Ovation for breach of contract (Count V).

The defendants move to dismiss the plaintiffs' amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons that follow, the motion to dismiss is **granted in part and denied in part**.

**I.**

**A.**

The following facts are taken from the amended complaint and are accepted as true for purposes of this motion.

In 2023, Gorin created the software codebase and program Qualibee Software Codebase ("Qualibee"), which is part of a product called Qualibee.AI. Am. Compl. ¶¶ 3, 17, ECF No. 17. Qualibee is an artificial intelligence code and platform that aids in qualitative market research. Id. ¶ 18. On January 3, 2024, the plaintiffs and the defendants entered into a Contract of Acquisition (the "Contract"). Id. ¶ 22. The Contract provides that Ovation "agrees to acquire Qualibee.AI and its Assets" from the plaintiffs, and that the plaintiffs "agree to transfer all rights, titles, and interests in Qualibee.AI and its assets to [Ovation]." Am. Compl. Ex. 2 ("Ex. 2"), at 2, ECF No. 17-2. The Contract defines "Qualibee.AI" to include "the application software, including its source code, object code, and accompanying

documentation," and defines "assets" to include "all related intellectual property" owned by Qualibee.AI. Id. The Contract provides that the "total purchase price for Qualibee.AI and its Assets shall be a non-cash contract/employment/royalty agreement outlined in Appendix A[,] subject to adjustments as agreed upon by the Parties." Id. at 3.

The Contract contains several other relevant provisions and appendices. First, the Contract includes Appendix A, which outlines employment provisions and the payment of royalties for each of the plaintiffs. Id. at 5. Appendix A provides that Ovation would employ Larsen "under a mutually agreeable separate employment contract," and Gorin "under a mutually agreeable separate contractor agreement," both for a three-year period in which each of the plaintiffs would "earn a Royalty of 10% of all product sales and services sales so long as said sales yield a minimum 60 gross margin," with royalties to be paid quarterly. Id.[1] Second, the Contract includes Appendix B, which outlines buy-back provisions, under which "all rights to the [] Source Code, including intellectual property rights and any licenses, shall revert to [the plaintiffs] as Qualibee.AI." Id. at 6. Pursuant to Appendix B, the plaintiffs could exercise the buy-back option in certain circumstances, including if:

> [Ovation] decides to sell OvationMR and offers [plaintiffs] an early buyout; [Ovation] fails to maintain contract commitments and remedy within a 15-day period of notice; [plaintiffs] fail to

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

> maintain contract commitment and remedy with a 15-day period of notice; or [a]ll parties agree to disband the joint effort.

Id. Third, the Contract contains an arbitration provision, providing that any disputes arising out of the Contract "shall be resolved through arbitration in New York, NY." Id. at 3. The Contract also includes a choice-of-law provision, providing that the Contract "shall be governed by and construed in accordance with the laws of the State of New York." Id.

The plaintiffs allege that Ovation repeatedly failed to provide quarterly royalty payments to the plaintiffs, and that when royalties were paid, Ovation provided only "miniscule amounts." Am. Compl. ¶ 28. According to the plaintiffs, Ovation did not justify its failure to pay royalties because Ovation never stated that relevant sales were below the 60% gross margin requirement for royalty payments. Id. ¶ 26. The plaintiffs further allege that Ovation failed to provide accounting information to the plaintiffs when requested. Id. ¶¶ 29–30. In September 2025, the plaintiffs sought to revoke the defendants' use of Qualibee for "failure[] to satisfy their obligations under the contract." Id. ¶ 31. On November 14, 2025, Larsen and Gorin registered Qualibee with the United States Copyright Office. Am. Compl. Ex. 1 ("Ex. 1"), at 1, ECF No. 17-1.

The plaintiffs plead, upon information and belief, that Ovation, under Whaley's supervision, continued to "reproduce, adapt, and distribute Qualibee.ai, a platform which contains Qualibee" without authorization from the plaintiffs. Am. Compl. ¶ 32. The defendants purportedly "falsely represented" that the defendants held the copyright in Qualibee and had the

right to sell and use Qualibee. Id. ¶ 33. The plaintiffs further allege that the defendants "intentionally omitted copyright management information identifying or attributing that [the plaintiffs] are the valid copyright owners of Qualibee." Id. ¶ 35. In the alternative, and also upon information and belief, the plaintiffs allege that the defendants "have purported to grant directly to their customers a license to use Qualibee.ai, which contains Qualibee." Id. ¶ 36.

The plaintiffs contend that the Contract granted the defendants a revocable "implicit license to use Qualibee," intended to vest Ovation with "all rights, title, and ownership to Qualibee" only once the defendants "satisfied their obligations under the Contract," including the payment of royalties. Id. ¶¶ 22, 24. The defendants, on the other hand, argue that all ownership rights in Qualibee were transferred to Ovation at the time the parties executed the Contract of Acquisition. Defs.' Mem. Law Supp. Mot. Dismiss ("Defs.' Mem.") at 9–11, ECF No. 19.

**B.**

The plaintiffs filed the initial complaint on January 20, 2026, Compl., ECF No. 1, and filed an amended complaint on March 24, 2026. Am. Compl.

In their amended complaint, the plaintiffs allege that Ovation directly infringed the plaintiffs' copyright by continuing to distribute Qualibee without authorization (Count I). Am. Compl. ¶¶ 42–47. The plaintiffs claim that because Whaley allegedly supervised the continued distribution of

Qualibee, he is liable for contributory and vicarious copyright infringement (Count III). Id. ¶¶ 53–57. The plaintiffs also allege that Ovation owes the plaintiffs damages for providing false Copyright Management Information ("CMI") during its distribution of Qualibee in violation of the DMCA (Count II). Id. ¶¶ 48–52. The plaintiffs make a claim of unjust enrichment against both Ovation and Whaley alleging that the defendants have been enriched by their continued unauthorized distribution of Qualibee (Count IV). Id. ¶¶ 58–63. Finally, and in the alternative, the plaintiffs allege breach of contract against Ovation based on Ovation's alleged breach of the terms of the Contract (Count V). Id. ¶¶ 64–71.

The defendants move to dismiss all counts of the amended complaint with prejudice, with Count V to be resolved in arbitration. Defs.' Mot. Dismiss at 1, ECF No. 18. For the reasons set forth below, the defendants' motion to dismiss is **granted with prejudice** with respect to Counts I–IV and **denied without prejudice** with respect to Count V. Counts I–IV of the amended complaint are **dismissed with prejudice**. Count V is **stayed** pending arbitration.

**II.**

When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function is

"not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

"For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). "When allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint as true." Rozsa v. May Davis Grp., Inc., 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002), aff'd sub nom. Rozsa v. SG Cowen Sec. Corp., 165 F. App'x 892 (2d Cir. 2006).

**III.**

**A.**

The defendants move to dismiss Counts I–III of the Complaint on the grounds that the plaintiffs did not own the copyright to Qualibee at the time of any alleged copyright infringement or violation of the DMCA. Ownership of a valid copyright is a necessary element for claims of infringement. See Star Athletica, L.L.C. v. Varsity Brands, Inc., 580 U.S. 405, 410 (2017) ("The first element of a copyright-infringement claim is ownership of a valid copyright."). Accordingly, if Ovation acquired Qualibee in the Contract of Acquisition and the plaintiffs ceased to own Qualibee at that time, the plaintiffs cannot state a claim for the defendants' subsequent use of Qualibee, whether for direct copyright infringement, contributory and vicarious infringement, or violations of the DMCA for the provision of falsified CMI (Counts I–III).

The plaintiffs do not dispute that the Contract of Acquisition is fully binding and enforceable, but they argue that it did not transfer copyright ownership in Qualibee to Ovation immediately upon signature. Pls.' Sur-Reply at 2.[2] The plaintiffs claim that the Contract was intended to be "executory," rather than completed, because the Contract did not indicate that the plaintiffs "hereby" convey the copyright but instead used language that the parties "agree[] to acquire" and "agree to sell and transfer"

[2] The plaintiffs specifically disown any argument that the Contract of Acquisition was simply an "agreement to agree." Pls.' Sur-Reply at 2–3.

Qualibee.AI and its assets. Pls.' Mem. Opp'n Mot. Dismiss ("Pls.' Opp'n") at 12–13, ECF No. 26. However, the plaintiffs agree that there is no need for the Contract to contain the word "hereby" or any other specific phrase or "magic words" to effect the immediate transfer of the copyright ownership. Pls.' Sur-Reply at 4.

The plaintiffs claim that the "compensation obligations" and the "consummation of the copyright transfer" were ongoing obligations that were left "outstanding." Id. at 3. Under the plaintiffs' theory, the defendants received only an "implicit license" to use Qualibee, which could be revoked if the defendants failed to satisfy terms of the Contract, specifically the terms outlining the royalty payment and employment agreements in Appendix A. Am. Compl. ¶¶ 22, 24. In effect, the plaintiffs' argument is that Ovation's satisfactory performance was a condition precedent to the transfer of the copyright in Qualibee. See id. ¶ 22 ("The term of the implicit license to use Qualibee was to last until Defendants had satisfied their obligations under the Contract and would then acquire all rights, title, and ownership to Qualibee.").

"Conditions precedent are not favored under New York law, and in the absence of unambiguous language, a condition precedent will not be read into [an] agreement." Houbigant, Inc. v. IMG Fragrance Brands, LLC, No. 9-cv-839, 2009 WL 5102791, at *2 (S.D.N.Y. Dec. 18, 2009).[3] Conditions precedent

---

[3] The parties do not dispute that New York law governs the Contract, which includes a choice-of-law provision requiring that the Contract "be governed by

are often accompanied by the "linguistic conventions of condition — such as 'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to.'" Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc., 821 F.3d 297, 305 (2d Cir. 2016). "[A] contractual duty is not to be construed as a condition precedent unless the language of the contract clearly imposes such a condition." Kidder Peabody & Co., Inc. v. Unigestion Int'l Ltd., 903 F. Supp. 479, 501 (S.D.N.Y. 1995).

The plaintiffs here fail to identify any unambiguous language in the Contract that indicates that the defendants' satisfactory performance of their obligations under the contract was a condition precedent to the transfer of copyright ownership in Qualibee. The Contract does not contain any "linguistic conventions of condition" related to the defendants' acquisition of Qualibee and its Assets. Bank of N.Y. Mellon Trust Co., N.A., 821 F.3d at 305. The phrases "agrees to acquire" or "agree to sell and transfer" do not reflect a condition precedent because the parties already satisfied their duty "to agree" by signing the agreement. Ex. 2 at 2. Interpreting an "agree[ment] to acquire" as a condition precedent would instead imply an agreement to agree, which the plaintiffs have explicitly rejected as their legal theory. Pls.' Sur-Reply at 2–3.[4] Moreover, there is no language in the Contract of

---

and construed in accordance with the laws of the State of New York." Ex. 2 at 2.

[4] Although the plaintiffs used the language "agreement to agree" in their reply memorandum, Pls.' Opp'n at 14, the plaintiffs subsequently clarified that they did not intend to invoke the legal doctrine. Pls.' Sur-Reply at 2–3.

Acquisition that purports to grant Ovation only a "license" to use Qualibee, rather than a completed purchase.

The plaintiffs argue that the buy-back option is proof that the Contract was not intended to effect an immediate transfer, describing the buy-back as merely "a framework for future negotiation" because the option "is not self-executing—it requires future mutual agreement to take effect." Pls.' Opp'n at 16. That characterization is unpersuasive. By its terms, the buy-back provision presupposes that the copyright ownership had been transferred from the plaintiffs to Ovation and that the plaintiffs were provided the opportunity to buy it back. For the plaintiffs to buy back "all rights to the Source Code," and for Ovation's "ownership of the [] Source Code [to] be terminated," the Contract must contemplate that Ovation already owned the copyright when the buy-back option was to be exercised. Ex. 2 at 6. The existence of the buy-back option strengthens the conclusion that the transfer of ownership in Qualibee occurred when the Contract was executed and was not subject to any condition precedent.

The plaintiffs argue that the language of the Contract is ambiguous, and thus its construction presents a question of fact that precludes dismissal on a Rule 12(b)(6) motion. Pls.' Opp'n at 17. "The language of a contract is not made ambiguous simply because the parties urge different interpretations." Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992). "Nor does ambiguity exist where one party's view strains the contract language beyond its reasonable and ordinary meaning." Id. Moreover,

"the Court need not accept [the plaintiff's] interpretation of the contract as true when that interpretation goes against the contract's plain language, which the Court is bound to impose." Liu Jo S.P.A. v. Jenner, 630 F. Supp. 3d 501, 515 (S.D.N.Y. 2022). The plaintiffs' interpretation, which involves the creation of an ongoing and revocable licensing arrangement—as opposed to an immediate transfer of rights—is unsupported by the plain text of the Contract. But even "[i]f the language [was] in any way ambiguous, the law does not favor a construction which creates a condition precedent." Comerica Leasing Corp. v. Bombardier Inc., No. 16-cv614, 2019 WL 11027701, at *6 (S.D.N.Y. Sept. 30, 2019) (citing Ashkenazi v. Kent S. Assocs., LLC, 857 N.Y.S.2d 693, 694 (App. Div. 2008)). There is no ambiguity in the language of the Contract, and there is no basis to read in a condition precedent to the Contract. The Contract transferred copyright ownership in Qualibee to Ovation at the time of execution and the plaintiffs thus have no valid claim of copyright ownership.

Absent copyright ownership, the plaintiffs cannot maintain a claim of direct copyright infringement against Ovation. Thomas v. Carter, 581 F. Supp. 3d 651, 656 (S.D.N.Y. 2022) (dismissing copyright infringement claim for failure to show ownership of a valid copyright). And without a claim that Ovation engaged in direct copyright infringement, the plaintiffs' claim of contributory and vicarious liability against Whaley likewise fails. See Faulkner v. Nat'l Geographic Enters. Inc., 409 F.3d 26, 40 (2d Cir. 2005) ("[T]here can be no contributory infringement absent actual infringement.").

The plaintiffs' claim for damages for the provision of false CMI under the DMCA fails on similar grounds. Under the DMCA, distributors of copyrighted material are obligated to "inform the public that something is copyrighted," by giving credit to the valid copyright owners. Laser Kitten, LLC v. Marc Jacobs Int'l, LLC, No. 17-cv-8613, 2018 WL 4830091, at *4 (S.D.N.Y. Oct. 4, 2018). CMI includes "the name of, and other identifying information about, the author or copyright owner of the work." Mango v. BuzzFeed, Inc., 970 F.3d 167, 171 (2d Cir. 2020). A party may be held liable for providing falsified CMI under 17 U.S.C. § 1202(a) or for intentionally removing or altering CMI without authorization from the copyright owner under 17 U.S.C. § 1202(b).[5] To state a claim for damages under either provision, the plaintiffs must plead, among other things, that the defendants knew that the CMI was false, or knew that the CMI was removed or altered without the authority of the copyright owner, and that the defendants acted with the intention or knowledge that the false or altered CMI would "induce, enable, facilitate, or conceal an infringement." Compare Steinmetz v. Shutterstock, Inc., 629 F. Supp. 3d 74, 85 (S.D.N.Y. 2022) (outlining elements of § 1202(a) claim), with Mango, 970 F.3d at 171 (outlining elements of a § 1202(b) claim).

---

[5] The amended complaint pleads a count of direct copyright infringement for the "provision of false copyright management information" under the DMCA See Am. Compl. ¶¶ 48–52. The plaintiffs' opposition refers to violations of both § 1202(a) for the provision of false CMI and § 1202(b) for the unauthorized removal or alteration of CMI. Pls.' Opp'n at 19–20. The plaintiffs fail to state a claim under either provision.

The plaintiffs allege that Ovation distributed Qualibee with CMI falsely representing Ovation—rather than the plaintiffs—as the valid copyright owner. Am. Compl. ¶¶ 34–35, 51. Because the plaintiffs fully transferred copyright ownership of Qualibee to Ovation in the Contract, any distribution of Qualibee's CMI that identified Ovation as the valid copyright owner was not false. Similarly, Ovation's omission of the plaintiffs as the copyright owners could not be unauthorized because Ovation itself is the valid copyright owner and the plaintiffs were not the copyright owners. The plaintiffs also do not plausibly plead that the defendants had any intention or knowledge that distribution of any CMI identifying Ovation as the rightful copyright owner would "induce, enable, facilitate, or conceal an infringement" of Qualibee's copyright information. See 17 U.S.C. §§ 1202(a)–(b). The plaintiffs accordingly fail to state a claim for damages under the DMCA.

Because the plaintiffs have failed to show that they maintained copyright ownership in Qualibee, the defendants' motion to dismiss the claims of direct copyright infringement, contributory and vicarious infringement, and violations of the DMCA is **granted** and Counts I–III are **dismissed with prejudice.**

**B.**

In addition to the copyright infringement and DMCA claims, the plaintiffs bring a claim for unjust enrichment against both defendants, alleging that the continued distribution of Qualibee generated more than $75,000 for the defendants. Am. Compl. ¶¶ 59–61. The defendants move to

dismiss this claim on the grounds that it is preempted by the Copyright Act. See Defs.' Mem. at 15–16.

A state law claim is preempted by the Copyright Act where the work at issue falls within the subject matter of the Copyright Act and where the state law claim seeks to "vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 305 (2d Cir. 2004). "In order for a state cause of action to survive preemption, it must have an extra element . . . which changes the nature of the action so that it is qualitatively different from a copyright infringement claim." Transcience Corp. v. Big Time Toys, LLC, 50 F. Supp. 3d 441, 453 (S.D.N.Y. 2014). "Although a claim for unjust enrichment additionally requires that the defendant be enriched, the Second Circuit [Court of Appeals] and courts in [the Southern District of New York] have consistently held that this enrichment element does not suffice to shield an unjust enrichment claim from preemption when the claim arises from unauthorized use of a copyrighted work." Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312, 321–22, 322 n.64 (S.D.N.Y. 2010) (collecting cases); Briarpatch, 373 F.3d at 306–07 (finding New York state unjust enrichment claim is preempted).

Qualibee, as computer source code, falls within the subject matter of the Copyright Act. See Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d

693, 702 (2d Cir. 1992). The plaintiffs' unjust enrichment claim seeks to recover damages for the alleged "unauthorized reproduction, distribution and/or adaptation of Qualibee." Am. Compl. ¶ 59. These are exclusive rights already protected by copyright law. The plaintiffs also do not allege any additional element that distinguishes the nature of their unjust enrichment claim from their copyright infringement claims.

The plaintiffs concede in their opposition papers that the amended complaint, as currently pleaded, is not "immune from preemption," but argue that their theory of unjust enrichment is grounded "in commercial activity rather than solely in unauthorized copying," making it "qualitatively different from a copyright infringement claim." Pls.' Opp'n. at 21. The plaintiffs add that "[t]he enrichment alleged . . . flows from deceptive trade practices, not from reproduction." Id. This construction of the unjust enrichment claim misses the mark. The plaintiffs' unjust enrichment claim based on deceptive trade practices is still rooted in allegations that the defendants are "misleading the public by asserting [the plaintiffs'] copyright" as their own. See We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.), 221 F. Supp. 3d 396, 412 (S.D.N.Y. 2016). Alleging misrepresentation "does not go far enough to make [an] unjust enrichment claim qualitatively different from a copyright infringement claim." Roberts v. BroadwayHD LLC, 518 F. Supp. 3d 719, 735 (S.D.N.Y. 2021). Thus, even under the construction

offered by the plaintiffs in their opposition, the unjust enrichment claim is preempted by the Copyright Act.

The defendants' motion to dismiss the unjust enrichment claim is **granted** and Count IV is **dismissed with prejudice**.

**C.**

Finally, in the alternative to Counts I–IV, the plaintiffs allege that Ovation breached the Contract by failing to pay the plaintiffs royalties as described in Appendix A and by failing to provide an accounting to justify that failure (Count V). Am. Compl. ¶¶ 66, 69. The defendants ask the Court to dismiss the claim or compel arbitration. Defs.' Mem. at 16–17. Although the plaintiffs "do not concede arbitrability," they request that the Court compel arbitration and stay the case, rather than dismiss it, if the Court finds the breach of contract claim is arbitrable. Pls.' Opp'n at 24.

Under § 4 of the Federal Arbitration Act ("FAA"), "a district court must enter an order to arbitrate upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 n.27 (1983). A claim is subject to arbitration if (1) the parties agreed to arbitrate, and if so, (2) the scope of the arbitration agreement encompasses the disputed claim. See Holick v. Cellular Sales of N.Y., LLC, 802 F.3d 391, 394 (2d Cir. 2015). "A party to an arbitration agreement seeking to avoid arbitration

generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010). When the Court determines that a claim is subject to arbitration, and a party requests a stay, "§ 3 of the FAA compels the court to stay the proceeding" rather than dismiss the action. Smith v. Spizzirri, 601 U.S. 472, 478 (2024).

The plaintiffs' breach of contract claim is subject to arbitration because the parties agreed to arbitration and the arbitration agreement covers the disputed claim in this case. The Contract includes an arbitration clause that indicates that "[a]ny disputes arising out of this Contract shall be resolved through arbitration in New York, NY." Ex. 2 at 2. The plaintiffs' claim arises out of the Contract because the plaintiffs invoke its terms to seek damages for unpaid royalties. Neither party has raised any grounds to find that the arbitration agreement is inapplicable or otherwise invalid. The plaintiffs' breach of contract claim is accordingly subject to arbitration.

The defendants do not point to any separate reasons to dismiss the breach of contract claim "unrelated to the fact that [the claim] is subject to arbitration." See Spizzirri at 476 n.2. Accordingly, the defendants' motion to

dismiss the breach of contract claim (Count V) is **denied** and the case is **stayed** pending arbitration.[6]

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit.

For the foregoing reasons, the defendants' motion to dismiss is **granted in part and denied in part**. The defendants' motion is **granted** with respect to Counts I–IV. Counts I–IV are **dismissed with prejudice**.

The defendants' motion to dismiss Count V is **denied**. The parties are ordered to arbitrate the claim and the plaintiffs' request to stay this action pending the outcome of arbitration is **granted**. The parties are instructed to advise the Court within thirty (30) days what arrangements they have made to arbitrate their breach of contract dispute. The parties are also instructed to provide the Court with a status update within seven (7) days of the termination of the arbitration.

---

[6] If the parties are unable agree on a method for appointing an arbitrator, given that no method was provided for in the Contract, the Court will retain jurisdiction to appoint an arbitrator pursuant to 9 U.S.C. § 5. See Jules v. Andre Balazs Props., 608 U.S. 200, 204, (2026) ("During arbitration, federal courts may facilitate the proceedings, including by appointing an arbitrator under § 5.").

The Clerk is respectfully requested to close ECF No. 18.

**SO ORDERED.**

**Dated:** **New York, New York**
**October 21, 2026**

**John G. Koeltl**
**United States District Judge**